## MARY T. WYETH *vs.* NATIONAL MARKET BANK OF BRIGHTON.

Suffolk.   November 16, 1880; March 7. — May 6, 1882.

Certain promissory notes, secured by a mortgage of land, the property of R., the mortgagee, were deposited by him in a bank, of which he was a director, in a package with other securities, under an agreement that they were all to be held as collateral security for his liability to the bank.   R. was accustomed to add securities to this package, and to take securities away from it, with the consent of the officers of the bank; and, in January 1876, he took away these notes, with the permission of the cashier, and assigned them and the mortgage to W. for their full value; but the assignment of the mortgage was not recorded until May 1877.   W. requested R. to take charge of the notes for him, and R. placed them in his package at the bank, and collected the interest as W.'s agent.   The mortgage was never in the bank, and no inquiry was made there in relation to it until May 1877, when the credit of R. had become bad.   Neither the president, nor any director, except R., knew that the notes had been taken from the bank, and no one connected with the bank knew that he had disposed of them, until he was asked to assign to the bank the several mortgages held by it as collateral security.   At the time the notes were first left at the bank, and up to the time of his failure, R.'s debt to the bank had been much greater than the amount of these notes, but much less than the value of all his securities left with the bank. The notes had been relied on as part of the collateral security in making loans to R.; and, prior to January 1876, R. had spoken of them as valuable, but they were not alluded to between R. and the other directors after that time.   In July 1876, the bank lent R. a certain sum, relying upon his package of securities as collateral security.   At that time the package contained W.'s notes, and other securities, including some bonds, which were worth more than the amount of the loan.   These bonds R. was allowed, after that time, to take away and dispose of for his own benefit.   The directors and officers of the bank had no actual knowledge of the return of W.'s notes, and did not rely upon them as security for any loan afterwards made to R.   R. acted in good faith in selling the notes and mortgage to W., believing his debt to the bank to be much less than the value of his other securities deposited there, and having forgotten that he had given the agreement as to collateral security.   W. had no knowledge of this agreement.   *Held,* that these facts warranted a finding that R. never intended that the notes, after they were again put in the bank, should form part of the collateral security, and that the bank did not hold them as such, nor rely upon them in making loans to R.

TORT for the conversion of eight promissory notes, for $500 each, secured by a mortgage of land.   Trial in the Superior Court, without a jury, before *Colburn,* J., who found for the plaintiff; and reported the case for the determination of this court.   If the finding was warranted by the facts, judgment was to be entered thereon; otherwise, judgment for the defendant.   The facts appear in the opinion.

The case was argued at the bar in November 1880, and in March 1882 was submitted on briefs to all the judges.

*H. Baldwin*, for the defendant.

*W. S. Stearns*, for the plaintiff.

ENDICOTT, J. It appears from the report that before January 19, 1876, these notes, secured by the mortgage, were the property of Rice, the mortgagee, and were deposited in the defendant bank, in a package with other securities, under an agreement that they were all to be held as collateral security for his liability to the bank. Rice was accustomed to add securities to this package, and to take securities away from it, with the consent of the officers of the bank; and, on the date above mentioned, he took away these notes, with the permission of the cashier, and assigned them and the mortgage to the plaintiff for their full value. The assignment of the mortgage was not recorded until May 1877. This transaction put an end to any claim the defendant had upon the notes as collateral security at that time.

Rice had been in the habit of assisting the plaintiff in the management of her business affairs, and, having no safe place to keep the notes, she asked him to take charge of them. He agreed to do so, and placed them in his package at the bank; and, in July 1876 and January 1877, collected the interest, as her agent, and paid it over to her. The mortgage was never in the bank, and no inquiry was made by the bank in relation to it, until May 1877, when the credit of Rice had become bad. Neither the president, nor any director, except Rice, knew that the notes had been taken from the bank, and no one connected with the bank knew that he had disposed of them, until he was asked to assign to the bank the several mortgages held by it as collateral security. He then informed the cashier that he had assigned the notes and this mortgage to the plaintiff. At the time the notes were first left at the bank, and continuously up to the time of his failure, the debt of Rice to the bank had been much greater than the amount of these notes, but much less than the value of all his securities left with the bank. The notes had been relied on as part of the collateral security in making loans to Rice; and, prior to January 1876, Rice had spoken of them as valuable; but there was no evidence

that they had ever been alluded to between Rice and the other directors after that time. In July 1876, the bank lent Rice $10,000, relying upon his package of securities as collateral security. At that time, the package contained the plaintiff's notes, and other securities, including some railroad bonds, which were worth in the market $15,000. These bonds Rice was allowed, after that time, to take away and dispose of for his own benefit.

There is no evidence that the directors or officers of the bank had any actual knowledge of the return of the notes, or that the bank relied upon them as security for any loan afterwards made to Rice. And it is expressly found, that no allusion was made to them after January 19, 1876, as security for any loan, though previously to that time they had been spoken of. It is also expressly found that Rice acted in good faith in selling the notes and mortgage to the plaintiff, believing his debt to the bank to be much less than the value of his other securities deposited there, and having forgotten that he had given the agreement as to collateral security. It does not appear that the plaintiff had any knowledge of this agreement.

The presiding judge might, therefore, well have found that Rice never intended that the notes, after they were again put in the bank, should form part of the collateral security; and that the bank did not hold them as such, nor rely upon them in making loans to Rice.          *Judgment for the plaintiff.*